**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ISAAC SOLEIMANI <br><br> Plaintiff, <br><br> -against- <br><br> WHITE OAK GLOBAL ADVISORS, LLC <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Isaac Soleimani ("Plaintiff"), by and through his undersigned attorneys, for his Complaint against Defendant White Oak Global Advisors ("Defendant" or "WOGA"), alleges upon knowledge and belief as follows:

## NATURE OF THE ACTION

1.    This action arises from Defendant's failure to pay, pursuant to the terms of an unambiguous contract (with amendments, the "Term Sheet") it entered with Plaintiff, the calculated fair market value of his fully vested equity interests (referred to in the Term Sheet as "HVE Revenue Sharing Interests") in White Oak Health Care Finance, LLC ("WOHCF") and certain related affiliates (the "WOHC LLCs") upon his purported termination as an employee and manager of WOHCF and the WOHC LLCs.  Based upon a recent valuation of WOHCF by Macquarie Capital, a leading global financial services firm, Plaintiff estimates the value of his HVE Revenue Sharing Interests to be approximately $125,000,000.

2.    The issues here are already the subject of two related actions.  In one action before the Delaware Court of Chancery, Vice Chancellor Lori W. Will has ruled on summary judgment in Mr. Soleimani's favor, finding that his purported termination as an employee and manager by Defendant and WOHCF was not effective because Mr. Soleimani was not paid the calculated fair

market value of his HVE Revenue Sharing Interests.  *See* Opinion, *Soleimani v. WOHCF LLC*, No. 2023-0948-LWW (Apr. 12, 2024).  The Court of Chancery ruled that under the unambiguous provisions of the Term Sheet, the payment for Plaintiff's HVE Revenue Sharing Interests was a condition precedent to the effectiveness of his termination, regardless of whether his termination was for "Cause" (as Defendant has baselessly purported) as defined in the Term Sheet, or for any other reason.

3.       The other related action is an arbitration proceeding by Plaintiff against WOHCF seeking, among other things, the payment of the calculated fair market value of Plaintiff's HVE Revenue Sharing Interests pursuant to the Term Sheet.  Plaintiff commenced that arbitration against both WOHCF and WOGA, but WOGA successfully moved to dismiss the arbitration against itself (not against WOHCF) on the ground that WOGA was not a party to the arbitration provision in the agreement, notwithstanding the fact that it executed the Term Sheet establishing Plaintiff's entitlement to the calculated fair market value of HVE Revenue Sharing Interests.

4.       The primary issue here, then, is whether WOGA is a co-obligor with WOHCF in connection with its Term Sheet obligation to pay the calculated fair market value of his vested equity interests.  It plainly is.

5.       The Term Sheet provides that "Upon the occurrence of a Specified Termination Event, Employee shall receive the Calculated Fair Market Value of all of his HVE Revenue Sharing Interests no later than the Specified Payment Date."  In turn, a "Specified Termination Event" was defined to include "termination by either the Employee or WOHCF after five (5) years from the Start Date *for any reason*."  The Court of Chancery held that by starting the termination process of Mr. Soleimani on September 18, 2023, WOGA and WOHCF triggered Plaintiff's right to receive the value of his HVE Revenue Sharing Interests.

6.      The passive tense wording of the singular payment obligation ("Employee shall receive") in the Term Sheet executed by WOHCF and WOGA makes clear that **both** WOHCF and WOGA obligated themselves to satisfying the obligation to Mr. Soleimani.

7.      California law, which governs the Term Sheet, confirms the interpretation that WOGA's obligation to pay the calculated fair market value of his HVE Revenue Sharing Interests is joint and several with WOHCF's.  California Civil Code section 1660 provides that a "promise, made in the singular number, but executed by several persons, is presumed to be joint and several."  California Civil Code section 1659 similarly provides that "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."

8.      Pursuant to the Term Sheet, Soleimani was entitled to receive the payment for his HVE Revenue Sharing Interests no later than December 18, 2023 if he was terminated without Cause and no later than March 18, 2024 if he was terminated with Cause.  Neither Defendant nor WOHCF has made such payment.

## **PARTIES**

9.      Plaintiff is a citizen of the State of New York, residing at 215 Grist Mill Lane, Great Neck, NY 11023.  Plaintiff is an employee of each of the WOHC Entities (as identified *infra* note 1)  and the Manager of each of the WOHC LLCs.  The principal place of business of the WOHC Entities is at 1155 Avenue of the Americas, New York, New York 10036.

10.      Defendant WOGA is a limited liability company organized and existing pursuant to the laws of the State of Delaware.  WOGA is an investment adviser, registered with the U.S. Securities and Exchange Commission.  Upon information and belief, WOGA has its principal office at 3 Embarcadero Center, San Francisco, CA 94111.

**RELATED PARTIES**

11.     Upon information and belief WOGA's members are White Oak Financial LLC, Andre Hakkak, Darius Mozaffarian, Barbara McKee, and David Hackett.

12.     Andre Hakkak, upon information and belief, is a member of WOGA and a resident of the State of Florida.

13.     Darius Mozaffarian, upon information and belief, is a member of WOGA and a resident of the State of California.

14.     Barbara McKee, upon information and belief, is a member of WOGA, and is a resident of the State of California.

15.     David Hackett, upon information and belief, is a member of WOGA, and is a resident of the State of California.

16.     White Oak Financial LLC, upon information and belief, is a limited liability company organized and existing pursuant to the laws of the State of Delaware.  Upon information and belief, its members are Andre Hakkak, Darius Mozaffarian, Barbara McKee, and David Hackett

17.     WOHCF is a limited liability company organized and existing under the laws of the State of Delaware.  WOHCF is a healthcare lending platform that Mr. Soleimani founded in 2016.  WOHCF has offices located at 1155 Avenue of the Americas, New York, New York 10036.

**JURISDICTION AND VENUE**

18.     This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and the action is between citizens of different states.

4

19.     This Court has personal jurisdiction over Defendant, which transacts business in New York, maintains an office location in New York and because this action arises out of the breach of the Term Sheet, which was performed by Soleimani in New York.

20.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in the Southern District of New York.

## SUBSTANTIVE ALLEGATIONS

21.     In 2015, shortly after Mr. Soleimani sold a highly successful healthcare lending business that he founded, Andre Hakkak ("Hakkak"), the controlling principal of WOGA, contacted Mr. Soleimani about forming a new healthcare lending platform.  Hakkak told Mr. Soleimani that he had access to investor funds managed by WOGA, an investment advisor focused on direct lending and specialty finance founded in 2007, which could provide upfront capital to start the new healthcare lending platform and would be able to raise growth capital in the future for WOHCF.

22.     The two men talked over the proposed business idea, and eventually Mr. Soleimani agreed to partner with Mr. Hakkak with the following conditions:  (1) Mr. Soleimani would be entitled to an 18% ownership stake in the new business; (2) Mr. Soleimani's equity stake would have an absolute liquidity or "exit" provision after 5 years; and (3) Mr. Soleimani would control the management of the new entity.  Mr. Hakkak agreed.

23.     Once the two men reached agreement on the basic terms, Messrs. Soleimani and Hakkak, together with their legal advisors, spent nearly six months negotiating the formal framework for the business, which ultimately incorporated Mr. Soleimani's three mandatory conditions.

24.     On November 25, 2015, Mr. Soleimani received a formal offer on the terms outlined in an accompanying term sheet (the "Original Term Sheet").

25.     The Original Term Sheet was modified on October 9, 2020 (the "Amended Term Sheet"). The Amended Term Sheet does not modify Mr. Soleimani's entitlements in the event that he were terminated. The Original Term Sheet, as amended, is referred to herein as the "Term Sheet."

26.     The Term Sheet is governed by California law.

27.     The Term Sheet specifies that "Upon the occurrence of a Specified Termination Event, Employee shall receive the Calculated Fair Market Value of all of his HVE Revenue Sharing Interests no later than the Specified Payment Date."

28.     Specified Termination Events are defined under the Term Sheet as:

> [T]he occurrence [of] any of the following events: termination of employment by WOHCF or WOGA (other than the termination by WOGA followed by hiring by WOHCA, as contemplated herein with respect to the initial period) without Cause, termination of employment by the Employee for 'Good Reason'; Employee's death, Employee's Disability; *or termination by either the Employee or WOHCF after five (5) years from the Start Date for any reason."*

29.     The Specified Payment Date is defined, in part as, " (A) 3 months after the date of the Specified Termination Event, in the event of termination of employment by WOHCF . . . without Cause . . . and  (B) 6 months after the date of the Specified Termination Event, in the event of death, Disability or termination after 5 years of the Start Date for any reason."

30.     Thus, under the Term Sheet's plain terms, regardless of the reason of termination (*i.e.*, with or without Cause by WOHCF or voluntary termination by Mr. Soleimani), any termination after 5 years from Mr. Soleimani's Start Date, defined as no later than December 31, 2015, shall constitute a Specified Termination Event and entitle him to "receive" the calculated

fair market value of his HVE Revenue Sharing Interests not later than six months after the date of his termination.

31.     Throughout his tenure as Manager, Mr. Soleimani led WOHCF to grow from a pure startup to an industry-leading, highly successful healthcare lending platform with a high-quality loan portfolio of approximately $3 billion and an equity value of approximately $650-850 million above the investors' invested capital, as appraised by Macquarie Capital, a leading global financial services company.  Mr. Soleimani has effectively created approximately $750 million in value for WOHCF's owners.

32.     Mr. Soleimani has assembled one of the most experienced management teams in the industry with over 50 experienced healthcare lending professionals.  Due to Mr. Soleimani's dedication and deep industry expertise, WOHCF has significantly outperformed its original business projections and has become the largest and most successful of all business lines in which WOGA's funds have invested.

33.     Mr. Soleimani currently owns 16.785% of WOHCF's equity as his ownership has been diluted from 18% due to certain grants of equity that he awarded to WOHCF's senior management team.

34.     Although Soleimani successfully grew WOHCF from its inception, by 2021, the relationship between Mr. Soleimani and WOGA had begun to deteriorate when Mr. Soleimani blocked WOGA's efforts to misappropriate the value of WOHCF to itself at the expense of WOHCF's investors.

35.     Specifically, in 2021, Messrs. Hakkak and Mozaffarian, on behalf of WOGA, approached Mr. Soleimani to propose a scheme they dubbed "Project Fairway," pursuant to which they sought Mr. Soleimani's assistance in their plot to buyout WOHCF's investors at an

artificially low valuation. WOGA would then capture (essentially steal) WOHCF's equity value for themselves at the expense of the investors, and provide a significant part that value to Mr. Soleimani. Mr. Soleimani rejected Messrs. Hakkak and Mozaffarian's proposal, making clear in writing in no uncertain terms that Project Fairway was fraudulent, unethical, and a breach of the fiduciary duties owed to WOHCF's investors.

36.    With Mr. Soleimani refusing to abide by Messrs. Hakkak and Mozaffarian's attempt to steal the equity value from investors through Project Fairway and WOGA's additional refusal to support a transparent and value-maximizing sale process as proposed by Mr. Soleimani, the relationship between Mr. Soleimani and Defendant soured, culminating in WOGA and the WOGA-controlled WOHCF Approval Committee's (the "Approval Committee's") purported termination of Mr. Soleimani on pretextual and unidentified grounds on September 18, 2023.

37.    Specifically, on September 18, 2023, Defendant, along with WOHCF and the Approval Committee, sent Mr. Soleimani a letter (the "Termination Letter"), stating:

> This letter is to inform you that your employment with White Oak Healthcare Finance, LLC ("WOHCF") has been terminated for Cause and that you have been removed as Manager of WOHCF and removed from all your positions in WOHCF and all other entities within the healthcare platform for which you previously served, including without limitation as managing director, head, chief executive officer, manager, board member, general partner, or in a similar role (collectively, "WOHC"),[1] effective immediately (please see attached separate notices).

38.    While purportedly terminating Mr. Soleimani "for Cause" under the Term Sheet, the Termination Letter does not specify any grounds for Cause (for there are none).

---

[1] Such entities include, but are not limited to: White Oak Healthcare Finance Direct, LLC; White Oak Healthcare Finance Blocker, Inc.; White Oak healthcare Real Estate Sale-Leaseback, LLC; White Oak Healthcare Real Estate Sale-Leaseback Blocker, Inc.; White Oak Healthcare REIT I LLC; White Oak Healthcare REIT II, LLC; White Oak Healthcare Rev Blocker, Inc.; White Oak Healthcare REIT Rev, LLC; White Oak Healthcare MOB Blocker, Inc.; White Oak Healthcare MOB, LLC; White Oak Healthcare MOB REIT, LLC; White Oak H-Alternative, LLC; and White Oak H-Alternative Blocker, Inc.

**RELATED ACTIONS**

*Delaware Chancery Court Action*

39.    On September 18, 2023—the same day that Mr. Soleimani received the Termination Letter—Mr. Soleimani filed a complaint in Delaware against WOGA's principals, Hakkak, Mozaffarian, McKee and Hackett, along with the purported "replacement manager" installed by the WOGA-controlled Approval Committee, Halle Benett, pursuant to 6 Del. C. 17-110 and 6 Del. C. 18-110, seeking an order declaring that Mr. Soleimani was improperly terminated because, pursuant to the White Oak Healthcare LLC Agreement (the "WOHCF LLC Agreement"), the payment of the calculated fair market value of his HVE Revenue Sharing Interests was a condition precedent to his removal as an employee and manager and he had not been paid for such interests.

40.    Specifically, Section 6.1 of WOHCF LLC Agreement states that:

> Mr. Soleimani may be removed by the Company as an employee in accordance with the provisions of the Term Sheet, provided that the Company ***has satisfied*** its obligations under the Term Sheet relating to a Specified Termination Event (as defined in the Term Sheet).

(emphasis added)

41.    The Parties cross-moved for summary judgment on the merits.

42.    On April 12, 2024, Vice Chancellor Will granted Mr. Soleimani's motion for summary judgment and denied Defendants' cross-motion.

43.    Among other things, the Court held:

- It is undisputed that the relevant payments have not been made to Soleimani. Thus, the condition precedent to his removal as an employee is unmet. He remains the manager of the limited liability companies as a matter of law. Summary judgment is therefore entered for Soleimani.

- "Soleimani reads Section 6.1 of the LLC Agreements as requiring the satisfaction of Specified Termination Event obligations under the Term Sheet before he can be

removed as an employee and then as Manager . . . The plain terms of the LLC Agreements support Soleimani's position." Op. at 11-12 (citations omitted).

- "[Section 6.1 of the LLC Agreement] contemplates a series of steps to effectuate [Mr. Soleimani's] removal. First, the Company must 'satisf[y] its obligations under the Term Sheet relating to a Specified Termination Event.' After doing so, it may 'remove[] [Soleimani] as an employee of the Company.' If he is removed as an employee, he may then be 'removed as a Manager by the Approval Committee' . . . Here, Soleimani's removal as an employee is conditioned upon the satisfaction of the Term Sheet's Specified Termination Event obligations." Op. at 12-13 (citations omitted).

- "The White Oak LLCs can terminate Soleimani's employment at any time for any reason (and they have). The process of effecting his termination remains ongoing. His formal removal as an employee and as Manager of the White Oak LLCs is ineffective until the bargained-for steps of Section 6.1 are completed." Op. at 17.

- "Thus, the Term Sheet read as a whole confirms that the phrase 'for any reason' must be construed broadly and literally. The Specified Termination Event definition does not limit the phrase to *qualified* reasons (as the defendants argue). In the event of a for Cause termination, Soleimani's entitlement to receive the calculated fair market value of certain revenue sharing interests depended on timing. If Soleimani were terminated for Cause before the five year anniversary of the Start Date, he would not be entitled to the fair market value of his revenue sharing interests. But if he were terminated after that date, it would constitute a Specified Termination Event requiring him to receive 'the Calculated Fair Market Values of his HVE Revenue Sharing Interests, and ownership interests.'" Op. at 21-22 (citations omitted).

44.    Thus, Vice Chancellor Will held that "Section 6.1 of the LLC Agreement says what it means and means what is says" and that Mr. Soleimani's termination constituted a Specified Termination Event entitling him to receive the fair market value of his HVE Revenue Interests regardless of whether his termination was for Cause. Op. 21-22.

*Arbitration*

45.    On October 17, 2023, after Mr. Soleimani's demand for an appraisal of his revenue sharing interests pursuant to the conditions set forth in the Term Sheet had gone unmet, Mr. Soleimani filed a demand for arbitration against both WOHCF and WOGA, seeking (i) a determination that Mr. Soleimani was not terminated for Cause as defined under the Term Sheet;

(ii) damages for Respondents' breach of contract for their failure to pay Mr. Soleimani the Calculated Fair Market Value of his HVE Revenue Sharing Interests and failure to pursue an appraisal of the interests, and (iii) costs and attorneys' fees.

46.    Respondents moved to dismiss the arbitration against WOGA (but not WOHCF) arguing that the Tribunal lacked jurisdiction over certain of the claims, including that under the Term Sheet's arbitration provision, the Tribunal lacked jurisdiction over WOGA.

47.    While recognizing that WOGA signed Mr. Soleimani's termination letter, "that WOGA is a party to the Term Sheets[,]" and "that WOGA potentially might be liable for any damages to Claimant," the Arbitration Panel ultimately concluded the Tribunal lacked jurisdiction over WOGA because it was not a party to the arbitration provision.

48.    The Tribunal also ordered that the parties engage a third-party appraiser to value Mr. Soleimani's revenue sharing interests and maintained jurisdiction over WOHCF and over managing the appraisal process.

49.    As of the date hereof, the appraisal has not been completed.  Based upon the prior valuation performed by Macquarie Capital, Soleimani expects that the appraisal will result in a determination that the Calculated Fair Market Value of the WOHC Entities is $750 million and, accordingly, that the Calculated Fair Market Value of his HVE Revenue Sharing Interests is $125,887,500.

## FIRST CLAIM
## BREACH OF CONTRACT

50.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-49 as if fully set forth herein.

51.    Plaintiff and Defendant are parties to the Term Sheet.

52.    Upon Plaintiff's termination from his employment by WOGA and WOHCF, he was entitled to receive the Calculated Fair Market Value of his HVE Revenue Sharing Interests in WOHCF, to be paid to him by Defendant.

53.    Defendant did not pay Plaintiff that to which he was entitled when he was terminated.

54.    By not making such payment to Plaintiff, Defendant breached the Term Sheet.

55.    As a direct, proximate, and foreseeable result of Defendant's breach, Plaintiff has been damaged.

**WHEREFORE**, Claimant demands judgment as follows:

a.    On the First Cause of Action, finding WOGA liable for the calculated fair market value of his HVE Revenue Sharing Interests and awarding him damages and prejudgment interest from the date such liability accrued.

b.    Awarding such additional equitable relief or other relief as deemed just and appropriate.

Dated: May 9, 2024

MINTZ LEVIN COHN FERRIS
GLOVSKY and POPEO, P.C.

Douglas P. Baumstein, Esq.
Andrew J. Bernstein, Esq.
Ellen Shapiro, Esq.
919 Third Avenue, 38th Floor
New York, New York 10022
Telephone: (212) 935-3000
Email: DBaumstein@mintz.com
AJBernstein@mintz.com
EShapiro@mintz.com