UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISAAC SOLEIMANI,

Plaintiff,

v.

WHITE OAK GLOBAL ADVISORS, LLC,

Defendant.

---

24 Civ. 3702 (DEH)

**OPINION
AND ORDER**

---

DALE E. HO, United States District Judge:

Plaintiff Isaac Soleimani brings this breach-of-contract action against White Oak Global Advisors, LLC ("WOGA") pursuant to 28 U.S.C. § 1332. Soleimani alleges that WOGA promised to make certain payments to him in the event of his termination as an employee under a contract between himself, WOGA, and another entity, White Oak Health Care Finance, LLC ("WOHCF"). WOGA moves to dismiss, arguing that only WOHCF, not WOGA, is bound by the provisions of the contract relied upon by Soleimani. For the reasons set forth below, WOGA's Motion to Dismiss is **GRANTED**.

<strong>BACKGROUND[1]</strong>

Soleimani founded and sold a successful healthcare lending business sometime in or before 2015. Compl. ¶ 21. In 2015, he was approached by the controlling principal of WOGA, an investment advisor focused on direct lending and specialty finance, about forming a new healthcare lending platform. *Id.* WOGA was to provide upfront capital and raise growth capital in the future. *Id.* Soleimani agreed to partner with WOGA on three conditions: (1) Soleimani would be entitled to an 18% ownership stake in the new business; (2) Soleimani's equity stake

---

[1] The following facts are taken from the Complaint and the contracts incorporated by reference therein. *See infra* Part II. The Court accepts Soleimani's allegations as true solely for the purpose of adjudicating the Motion to Dismiss.

would have an absolute liquidity or "exit" provision after 5 years; and (3) Soleimani would control the management of the new entity. *Id.* ¶ 22. WOGA's principal agreed. *Id.* Over the next six months, the two men worked together with their legal advisors to negotiate the formal framework for the business, which would be known as WOHCF. *Id.* ¶¶ 23, 17.

### A. The Original Term Sheet

On November 25, 2015, Soleimani received a formal offer on terms outlined in an accompanying term sheet executed by both WOHCF and WOGA. *Id.* ¶¶ 6, 24; *see* Candido Decl. Ex. 1 ("Original Term Sheet"), ECF No. 26-1; Baumstein Decl. Ex. B, ECF No. 29. The Original Term Sheet provided that Soleimani would be the Managing Director of WOHCF, a business line of WOGA, and defined him as "Employee." Original Term Sheet at 1. WOHCF would be organized as a separate legal entity in the form of an LLC. *Id.* Soleimani would be an employee of WOGA for an initial start-up period until WOHCF made its first loan, at which point his employment with WOGA would be terminated and he would be hired by WOHCF. *Id.* Soleimani's Start Date would be "[n]o later than December 31, 2015." *Id.* Soleimani accepted the offer of employment. *See* Baumstein Decl. ¶ 3.

The Original Term Sheet provides that Soleimani is entitled to the calculated fair market value of his fully vested equity interests in WOCHF (referred to as his "WOHCF Revenue Sharing Interests") in the event of his termination as an employee. Specifically, it provides:

> Upon the occurrence of a Specified Termination Event, Employee shall receive the Calculated Market Value of his WOHCF Revenue Sharing Interests . . . no later than the Specified Payment Date.

Original Term Sheet at 4. A "Specified Termination Event" is defined as:

> The occurrence of any of the following events: termination of employment by WOHCF or WOGA (other than the termination by WOGA followed by hiring by WOHCA, as contemplated herein with respect to the initial period) without Cause; termination of employment by the Employee for "Good Reason"; Employee's

death, Employee's Disability; or termination by either the Employee or WOHCF after five (5) years from the Start Date for any reason.

Compl. ¶ 28; Original Term Sheet at 4. The "Calculated Fair Market Value" is defined as "the Fair Market Value of the WOHCF Revenue Sharing Interests . . . as determined by a third party appraiser agreed to by Employee and WOHCF, acting reasonably and in good faith." Original Term Sheet at 4. The "Specified Payment Date" is defined, in part, as three months after termination "in the event of termination of employment by WOHCF or WOGA (other than the termination by WOGA followed by hiring by WOHCA, as contemplated herein with respect to the initial period) without Cause" and six months after termination in the event of "termination after 5 years of the Start Date for any reason." Compl. ¶ 29; Original Term Sheet at 4.

The Original Term Sheet incorporates an attached arbitration agreement between Soleimani and WOHCF. *See* Original Term Sheet at 10, 12. Under the arbitration agreement, "[e]ach of WOHCF and Employee agrees, upon demand by the other party, to submit to binding arbitration all claims, disputes and controversies between or among them" relating to, *inter alia*, "the performance by the parties of their respective obligations" under the Term Sheet and its related documents, "any breach of the provisions thereof," and "any enforcement of any of the terms or provisions thereof." *Id.* at 12.

On the signature page, the Original Term Sheet stated that:

> Employee, by signing below, hereby accepts the offer set forth in this Term Sheet on and as of the date first set forth above. Employee understands that, upon WOHCF's and WOGA's execution and delivery of this Term Sheet, this Term Sheet constitutes a binding agreement between WOHCF and Employee; provided that the offer of employment contained in the Term Sheet does not constitute an assurance of continued indefinite employment . . . .

*Id.* at 11. The Original Term Sheet was executed by both WOHCF and WOGA, but WOGA's signature contains the qualification that it is "with respect to the initial period only." *Id.* at 11.

3

### B.    The Amended Term Sheet

The Original Term Sheet was modified on October 9, 2020 in an Amended Term Sheet executed by Soleimani, WOCHF, and WOGA.  Compl. ¶ 25; see Candido Decl. Ex. 3 ("Amended Term Sheet") at 8, ECF No. 26-3; Baumstein Decl. Ex. A.  The parties refer to the Original Term Sheet, as amended by the Amended Term Sheet, as the "Term Sheet."  Compl. ¶ 25.  The Term Sheet is governed by California law.  *Id.* ¶ 26.

The Amended Term Sheet replaces all references to "WOHCF Revenue Sharing Interests" with "HVE Revenue Sharing Interests."  Amended Term Sheet at 4.  "HVE" refers to any one of WOHCF and a number of other affiliated entities that are also managed by Soleimani. *Id.* at 1.  The Amended Term Sheet also removes all references to the Original Term Sheet's "initial period" of employment with WOGA, which had long since elapsed by the time of amendment.  Thus, the Amended Term Sheet modifies the relevant provisions as follows:

| **Original Term Sheet** (deletions underlined) | **Amended Term Sheet** (additions in **bold**) |
|---|---|
| Upon the occurrence of a Specified Termination Event, Employee shall receive the Calculated Market Value of his <u>WOHCF</u> Revenue Sharing Interests . . . no later than the Specified Payment Date. | Upon the occurrence of a Specified Termination Event, Employee shall receive the Calculated Fair Market Value of all his **HVE** Revenue Sharing Interests no later than the Specified Payment Date. |
| The "Specified Termination Event" shall mean the occurrence any of the following events: termination of employment by WOHCF or WOGA <u>(other than the termination by WOGA followed by hiring by WOHCA, as contemplated herein with respect to the initial period)</u> without Cause; termination of employment by the Employee for "Good Reason"; Employee's death, Employee's Disability; or termination by either the Employee or WOHCF after five (5) | The "Specified Termination Event" shall mean the occurrence of any of the following events: termination of Employee's employment by WOHCF or WOGA without Cause; termination of employment by the Employee for Good Reason **(as defined below)**; Employee's death or Disability; or termination by either the Employee or WOHCF after five (5) years from the Start Date for any reason. |

| | |
|---|---|
| years from the Start Date for any reason. | |
| The "Specified Payment Date" shall be defined as, (A) 3 months after the date of the Specified Termination Date, in the event of termination of employment by WOHCF or <u>WOGA</u> <u>(other than the termination by WOGA</u> <u>followed by hiring by WOHCA, as</u> <u>contemplated herein with respect to the</u> <u>initial period)</u> without Cause, or termination by Employee for Good Reason; and (B) 6 months after the date of the Specified Termination Date, in the event of death, Disability, or termination after 5 years of the Start Date for any reason. | The "Specified Payment Date" shall be defined as (A) 3 months after the date of the Specified Termination Event, in the event of termination of employment by WOHCF or **any of their successors or assigns** without Cause, or termination by Employee for Good Reason; and (B) 6 months after the date of the Specified Termination Event, in the event of death, Disability or termination after 5 years of the Start Date for any reason. |
| The "Calculated Fair Market Value" shall mean the Fair Market Value of the <u>WOHCF</u> Revenue Sharing Interests . . . , as determined by a third party appraiser agreed to by Employee and WOHCF, acting reasonably and in good faith. | The "Calculated Fair Market Value" shall mean the Fair Market Value of the **HVE** Revenue Sharing Interests, as determined by a third party appraiser agreed to by Employee and WOHCF, acting reasonably and in good faith. |

Original Term Sheet at 4; Amended Term Sheet at 4.

The arbitration agreement between Soleimani and WOHCF remained unchanged by the amendment. Amended Term Sheet at 7. The signature page states that "this Amendment constitutes a binding agreement between WOHCF, WOGA and Employee." *Id.* at 8. WOGA executed the amendment without any reference to the initial period. *Id.*

### C.    Soleimani's Termination and Subsequent Developments

During his tenure as Manager, Soleimani led WOHCF to grow from a startup to a highly successful healthcare lending platform. Compl. ¶ 31. WOHCF outperformed its original business projections to become the largest and most successful of the business lines in which

WOGA's funds had invested.  Compl. ¶ 32.  Soleimani currently owns 16.785% of WOHCF's equity.  Compl. ¶ 33.

In 2021, two of WOGA's principals approached Soleimani to propose a buyout of WOCHF's investors at an artificially low valuation.  Compl. ¶ 35.  Under this plan, WOGA would capture WOHCF's equity value for itself and provide a significant part of that value to Soleimani.  *Id.*  Soleimani rejected the proposal, calling it fraudulent, unethical, and a breach of the fiduciary duties owed to WOHCF's investors.  *Id.*  After that, the relationship between Soleimani and WOGA began to sour.  Compl. ¶ 34.

On September 18, 2023, WOGA and the WOGA-controlled WOHCF Approval Committee[2] terminated Soleimani on pretextual and unidentified grounds.  *Id.* ¶ 36. Specifically,

WOGA, WOHCF, and the Approval Committee sent Soleimani a letter (the "Termination Letter"), stating:

> This letter is to inform you that your employment with White Oak Healthcare Finance, LLC ("WOHCF") has been terminated for Cause and that you have been removed as Manager of WOHCF and removed from all your positions in WOHCF and all other entities within the healthcare platform for which you previously served, including without limitation as managing director, head, chief executive officer, manager, board member, general partner, or in a similar role (collectively, "WOHC"), effective immediately (please see attached separate notices).

*Id.* ¶ 37.

On September 18, 2023, the same day Soleimani received the Termination Letter, he filed a complaint in the Delaware Court of Chancery against WOGA's principals; the "replacement manager" installed by the Approval Committee; WOHCF; and various affiliated LLCs, seeking

---

[2] According to the WOHCF LLC Agreement, the Approval Committee is chaired by the Manager (Soleimani) and includes one member appointed by the Manager and up to four members appointed by the Member Representative (WOGA).  Candido Decl. Ex. 2 ¶¶ 6.4, 11.14, ECF No. 26-2.

an order declaring that Soleimani was improperly terminated.  *Id.* ¶ 39; *see Soleimani v. Hakkak*, No. 2023-0948, 2024 WL 1593923, at *2 (Del. Ch. Apr. 12, 2024), *aff'd*, 327 A.3d 1060 (Del. 2024).  He argued that, pursuant to the White Oak Healthcare LLC Agreement (the "WOHCF LLC Agreement"), the payment of the calculated fair market value of his revenue sharing interests was a condition precedent to his removal as an employee and manager and he had not been paid for such interests.  Compl. ¶ 39; Candido Decl. Ex. 2 ("Original WOHCF LLC Agreement") at 1, ECF No. 26-2; Candido Decl. Ex. 4 ("Amended WOHCF LLC Agreement") at 1, ECF No. 26-4.  Section 6.1 of WOHCF LLC Agreement states that "Mr. Soleimani may be removed by [WOHCF] as an employee in accordance with the provisions of the Term Sheet, provided that [WOHCF] has satisfied its obligations under the Term Sheet relating to a Specified Termination Event (as defined in the Term Sheet)."  Compl. ¶ 40; Original WOHCF LLC Agreement ¶ 6.1.

The parties cross-moved for summary judgment, and on April 12, 2024, the Delaware Chancery Court granted summary judgment in favor of Soleimani.  Compl. ¶¶ 41-42.  The court held that under Section 6.1 of the WOHCF LLC Agreement, payment of the fair market value of Soleimani's revenue sharing interests was a "condition precedent to his removal as an employee."  Compl. ¶ 43; *Soleimani v. Hakkak*, 2024 WL 1593923, at *1.  The court therefore held that Soleimani's termination was ineffective and he remained Manager of WOHCF. *Soleimani*, 2024 WL 2186292, at *11.  On September 19, 2024, the Delaware Supreme Court affirmed the judgment and reasoning of the Court of Chancery.  *Hakkak v. Soleimani*, 327 A.3d 1060 (Del. 2024).

Meanwhile, on October 17, 2023, after Soleimani's demand for an appraisal of his revenue sharing interests under the Term Sheet had gone unmet, Soleimani filed a demand for arbitration against both WOHCF and WOGA.  Compl. ¶ 45.  He sought (1) a determination that

he was not terminated for cause as defined under the Term Sheet; (2) damages for failure to pay the fair market value of his revenue sharing interests and to pursue an appraisal of those interests; and (3) costs and attorneys' fees. *Id.* WOGA moved to dismiss, arguing that the tribunal lacked jurisdiction over it (though not over WOHCF) because WOGA was not a party to the arbitration provision. *Id.* ¶ 46. The tribunal agreed and dismissed WOGA from the arbitration, though it noted that "WOGA potentially might be liable for any damages to [Soleimani]." *Id.* ¶ 47. The tribunal also ordered that the parties engage a third-party appraiser to value Soleimani's revenue sharing interests. *Id.* ¶ 48. As of the filing of the Complaint in this action, the appraisal had not yet been completed, but Soleimani estimated the value of his revenue sharing interests at $125,887,500. *Id.* ¶ 49.

On May 8, 2025, after WOGA was dismissed from the arbitration, Soleimani filed this action, seeking to hold WOGA liable for the calculated fair market value of his revenue sharing interests. *See generally* Compl. WOGA's Motion to Dismiss followed. *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Br."), ECF No. 22.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[3] In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. But the court must disregard any "conclusory allegations, such as 'formulaic

---

[3] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  Additionally, "when ruling on [a] Rule 12(b)(6) motion[] to dismiss," district courts "consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference" and "matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

## DISCUSSION

### I.    Relevant Principles of California Law

The Court begins with a discussion of the relevant principles under California contract law, which governs the interpretation of the Term Sheet.[4]

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior Ct.*, 833 P.2d 545, 552 (Cal. 1992) (citing Cal. Civ. Code § 1636).  "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) (citing Cal. Civ. Code § 1639).  "If contractual language is clear and explicit, it governs." *Id.* at 641 (citing Cal. Civ. Code § 1638).  "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged by the party.  If it is not, the case is over." *S. Cal. Edison Co. v. Superior Ct.*, 44 Cal. Rptr. 2d 227, 232 (Ct. App. 1995).  Conversely, a "[contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 548 P.3d 303, 320 (Cal. 2024). "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in

---

[4] *See* Original Term Sheet at 9; Amended Term Sheet at 7.  Both parties agree that California law governs this dispute.  *See* Compl. ¶ 7; Def.'s Br. at 12-13.

the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Id.* "Courts will not strain to create an ambiguity where none exists." *Waller*, 900 P.2d at 627.

Where the intention of the parties to a contract is in doubt, California statutory law provides several rules of construction to aid in ascertaining their intent. *See* Cal. Civ. Code § 1637. Of particular relevance here, "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." *Id.* § 1659. Likewise, "[a] promise, made in the singular number, but executed by several persons, is presumed to be joint and several." *Id.* § 1660. This presumption, however, is rebuttable. *See Douglas v. Bergere*, 210 P.2d 727, 730 (Cal. Dist. Ct. App. 1949) ("The presumption created by Civil Code section 1659 is merely a species of evidence. It is the weakest and least satisfactory character of evidence." (citing *Simonton v. L.A. Tr. & Sav. Bank*, 270 P. 672, 675 (Cal. 1928))); *Eclipse Grp. LLP v. Target Corp.*, No. 23-55422, 2024 WL 2180079, at *1 (9th Cir. May 15, 2024) ("California's presumption of joint and several liability under California Civil Code §§ 1659 and 1660 is rebuttable." (citing *Douglas*, 210 P.2d at 730)).

Because "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates," Cal. Civ. Code § 1647, California law permits the introduction of extrinsic evidence to clarify the meaning of a contract under certain circumstances. As in most states, "[t]he parol evidence rule . . . provides that when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing." *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 291 P.3d 316, 318 (Cal. 2013). But under California law, "[e]xtrinsic evidence is admissible . . . to explain what the parties meant by the language they used." *Aragon-Haas v. Fam. Sec. Ins. Servs., Inc.*, 282 Cal. Rptr. 233, 238 (Ct. App. 1991). "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to

10

be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968).

Under California law, "[w]hen the facts are undisputed, as they are deemed to be on a ruling on a demurrer [or motion to dismiss], the interpretation of a contract . . . is a question of law." *Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 896 (Ct. App. 2010). Thus, "[w]hen the complaint fails to allege that the terms of the contract have any special meaning, the court can construe the language of the document on its face to determine whether as a matter of law the contract is reasonably subject to a construction sufficient to sustain a cause of action . . . ." *Id.* But if "the plaintiff alleges a meaning to the document that is reasonable in light of its terms," the court cannot grant a motion to dismiss and instead "must permit the admission of extrinsic evidence regarding the meaning of the document as intended by the parties." *Id.* Further, "the failure to plead what extrinsic evidence will be offered does not waive or forfeit any right to introduce such evidence." *Id.* "Where an ambiguous contract is attached and incorporated into the complaint, the party pleading is only required to allege in a complaint the meaning which the party ascribes to that contract." *S. Pac. Land Co. v. Westlake Farms, Inc.*, 233 Cal. Rptr. 794, 800 (Ct. App. 1987). Nevertheless, "[a] party's assertion of ambiguity does not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012).

With these principles in mind, the Court proceeds to consider the parties' arguments.

## II.    Materials to be Considered by the Court

In support of its Motion to Dismiss, WOGA submitted a declaration attaching ten documents for the Court's consideration: four contracts (the Original Term Sheet, Amended Term Sheet, Original WOHCF LLC Agreement, and Amended WOHCF LLC Agreement) and six filings from the Delaware court case and the arbitration. *See* Candido Decl. Exs. 1-10. In response, Soleimani submitted his own declaration attaching the Original and Amended Term Sheet, but he argues that the Court may not consider WOGA's remaining documents—and in particular the WOHCF LLC Agreement—on a motion to dismiss. *See* Baumstein Decl. Exs. A & B; Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Br.") at 8-9, ECF No. 30. Soleimani further argues that if the Court considers the remaining documents, it must convert the motion to one for summary judgment and give him the opportunity to present additional supporting material. *See* Pl.'s Br. at 9. As explained below, the Court concludes that the materials submitted by WOGA are integral to the Complaint and/or are judicially noticeable, such that the Court may consider them on this motion to dismiss. Moreover, although it appears that Soleimani's interpretation might be plausible at first blush, upon consideration of the entire agreement, the Court ultimately concludes that the Term Sheet is not reasonably susceptible to Soleimani's chosen construction. Accordingly, the Court declines to convert this motion to a motion for summary judgment because the consideration of extrinsic evidence—even under California's relatively permissive standard—is not appropriate.

### A.    Standard for Consideration of Materials Outside the Complaint

On a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). "Where a document is not incorporated by reference, the court may

nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* For a document to be considered integral to the complaint, "mere notice or possession" by the plaintiff is not enough; the plaintiff must "rely on the terms and effect of [the] document in drafting the complaint." *Id.* Moreover, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Id.* "Where a district court considers material outside of the pleadings that is not attached to the complaint, incorporated by reference, or integral to the complaint, the district court, to decide the issue on the merits, must convert the motion into one for summary judgment." *Id.*

### B.    The WOHCF LLC Agreement

Soleimani acknowledges that the Original and Amended Term Sheet serve as the basis for his Complaint and are therefore appropriate to review at the motion to dismiss stage. Pl.'s Br. at 4 nn.3 & 4. But he argues that the WOHCF LLC Agreement is not central to the Complaint and should be disregarded. Pl.'s Br. at 9. The Court disagrees. The WOHCF LLC Agreement arguably is incorporated by reference into the Complaint. *See* Compl. ¶¶ 39-44 (describing Delaware Chancery Court action based on the WOHCF LLC Agreement and quoting Section 6.1 of that Agreement). But even if it were not incorporated by reference, it is integral to the Complaint. As WOGA explains, "the WOHC LLC Agreements and the Term Sheet are a single integrated contract, and those documents must be read together as a whole." Def.'s Reply Supp. Mot. to Dismiss at 1, ECF No. 32.

It is a general principle of contract that "[w]hen a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument." 11 Williston on Contracts § 30:25

(4th ed. 2025).  Moreover, "absent anything to indicate a contrary intention, written instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument, even though they do not by their terms refer to each other."  *Id.* § 30:26.  California law incorporates this rule.  *See* Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."); *Mayers v. Loew's Inc.*, 221 P.2d 26, 29 (1950) ("Where two or more written instruments are executed contemporaneously, with reference to the other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given, if possible, to the purpose intended to be accomplished.").  So does Delaware law, which governs the WOHCF LLC Agreement.  *See Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 818-19 (Del. 2018) ("Other documents or agreements can be incorporated by reference where a contract is executed which refers to another instrument and makes the conditions of such other instrument a part of it.  When that occurs, the two will be interpreted together as the agreement of the parties.").

Here, the Amended Term Sheet and the Amended WOHCF LLC Agreement were executed on the same day by the same parties, and each refers to the other (or its prior versions) throughout.  *See* Amended Term Sheet at 1, 5, 9; Amended WOHCF LLC Agreement at 2, 10, 17, 24, 30, 37, 42.  The agreements must therefore be construed together.  *See Mayers*, 221 P.2d at 29; *Town of Cheswold*, 188 A.3d at 818-19.  By relying on the Term Sheet in drafting his Complaint, Soleimani necessarily also "rel[ied] on the terms and effect of" the WOHCF LLC Agreement.  *AECOM*, 19 F.4th at 106.  Soleimani does not dispute the authenticity or accuracy of the WOHCF LLC Agreement, nor are there any "disputed issues of fact regarding the

relevance of the document."[5]  *Id.*  Accordingly, both the Original and Amended WOHCF LLC Agreement (Candido Decl. Exs. 2 & 4) are integral to the Complaint, and the Court will consider them in resolving WOGA's Motion to Dismiss.[6]

### C.     The Delaware Court and Arbitration Filings

Soleimani does not directly challenge WOGA's submission of six filings from the related state court and arbitration proceedings.  *See* Candido Decl. Exs. 5-10.  To the extent the Court relies on these documents in this Opinion, it does so because they are either incorporated by reference into the Complaint, *see* Compl. ¶¶ 39-44, 45-49, or otherwise judicially noticeable, *see Bellin*, 6 F.4th at 473.

### D.     Whether to Convert to a Motion for Summary Judgment

Although Soleimani urges the Court to convert this to a motion for summary judgment if it wishes to consider the materials submitted by WOGA, the Court need only convert a motion to dismiss to one for summary judgment where it "considers material outside of the pleadings that is not attached to the complaint, incorporated by reference, or integral to the complaint." *AECOM*, 19 F.4th at 106.  Here, as discussed above, all the materials the Court considers are integral to or incorporated by reference into the Complaint, and/or are otherwise judicially noticeable.

---

[5] To the extent the parties dispute the relevance of the WOHCF LLC Agreement, their dispute concerns the proper interpretation of the words on the face of the Term Sheet and is therefore legal, not factual.

[6] Indeed, because the Term Sheet must be construed together with the WOHCF LLC Agreement, it might even be reversible error to refuse to consider the latter in resolving WOGA's Motion to Dismiss.  *See Atlanta Cancer Care, P.C. v. Amgen, Inc.*, 359 F. App'x 714, 715 (9th Cir. 2009) (reversing and remanding for consideration of "the entire contract" on motion to dismiss, where agreement that formed part of contract was not attached to complaint or provided by moving party, "thus prohibiting a reasoned and informed interpretation of their bargain").

15

Moreover, because the Term Sheet is not reasonably susceptible to Soleimani's interpretation, as explained below, the Court need not consider any extrinsic evidence, and converting this motion to a motion for summary judgment is therefore inappropriate.

### III.    Whether WOGA is Liable to Pay Soleimani's Revenue Sharing Interests

WOGA's principal argument in support of its Motion to Dismiss is that only WOHCF, not WOGA, is contractually liable to pay Soleimani's revenue sharing interests under the Term Sheet.  *See* Def.'s Br. at 10-13.  Soleimani counters that the Term Sheet's use of the passive voice to describe his entitlement to payment ("Employee shall receive") indicates that both signatories, WOHCF *and* WOGA, are bound by the promise.  *See* Pl.'s Br. at 10-16.  He argues that the presumption of joint and several liability under California Civil Code Sections 1659 and 1660 confirms his reading of the Term Sheet.  *See id.*  As explained below, the Court concludes that the presumption of joint and several liability is rebutted in this case by language in the Term Sheet and the WOHCF LLC Agreement indicating that the parties intended the obligation to be WOHCF's alone.

From the start, Soleimani's revenue sharing interests have been expressly tied to the commencement of his employment with WOHCF.  Original Term Sheet at 2 (stating that Soleimani "shall receive" his revenue sharing interests "upon becoming an employee of WOHCF").  WOGA was Soleimani's employer for only the brief transitional period between the execution of the Original Term Sheet and the date on which WOHCF made its first loan, at which point WOHCF became his employer instead.  *See id.* at 1, 9.  For that reason, WOGA executed the Original Term Sheet "with respect to the initial period only."  *Id.* at 11.  And the Original Term Sheet speaks of "WOGA or WOHCF (as applicable)" throughout to account for the fact that WOGA would have certain obligations as employer during the initial period, but not thereafter.  *See id.* at 2 (discussing payroll), 6 (discussing health insurance, technological

support, vacation, and indemnification), 8 (discussing disability benefits).  Thus, although WOGA is a signatory to the Original Term Sheet because of its role as Soleimani's employer during the initial period, the Term Sheet seems directed primarily at delineating the employment relationship between Soleimani and WOHCF.  Indeed, the signature page even states that "upon WOHCF and WOGA's execution and delivery of this Term Sheet, this Term Sheet constitutes a binding agreement *between WOHCF and Employee*."  *Id.* at 11 (emphasis added).  It is clear from the Original Term sheet that the parties intended the obligation to pay Soleimani's revenue sharing interests to lie with WOHCF, not WOGA.

Two other provisions in the Original Term Sheet support this conclusion.  *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").  First, the value of the revenue sharing interests is to be "determined by a third party appraiser agreed to by Employee and WOHCF"—not WOGA.  Original Term Sheet at 3.  If the parties had intended WOGA to be liable for payment of the revenue sharing interests, they would have included WOGA in this provision.  Second, only Soleimani and WOHCF are parties to the arbitration agreement, which applies to "all claims, disputes and controversies between or among them" arising out of the Term Sheet, including "the performance by the parties of their respective obligations thereunder," "any breach of the provisions thereof," and "any enforcement of any of the terms or provisions thereof."  *Id.* at 12.  It would have been nonsensical for the parties to exclude WOGA from the arbitration agreement if they believed WOGA to have obligations under the Term Sheet commensurate with WOHCF's.

The Amended Term Sheet does not change the Court's conclusion.  Soleimani describes it as "telling" that "WOGA, which was no longer his employer, was not excused from the obligation" at the time of amendment.  Pl.'s Br. at 14.  But the most obvious reason for this is

that the Original Term Sheet provided that amendments could only be made "by a writing executed and delivered by each of the parties hereto," Original Term Sheet at 9, thereby requiring WOGA's signature.[7]  Critically, the Amended Term Sheet maintained the provisions requiring fair market value to be determined by a third-party appraiser agreed to by Soleimani and WOHCF (not WOGA), and requiring Soleimani and WOHCF (not WOGA) to submit any disputes to arbitration.  Amended Term Sheet at 4, 7.

Contemporaneously with the Amended Term Sheet, the parties executed the Amended WOHCF LLC Agreement, which reinforces the Court's conclusion that payment of the revenue sharing interests is WOHCF's obligation and not WOGA's.  The Amended WOHCF LLC Agreement provides:

> The Term Sheet provides for certain payments to be made under the circumstances described therein and *such payment provisions are acknowledged as obligations of the Company [i.e., WOHCF]*, which are payable prior to Distributions made to Members. These payments include payment of the "Calculated Fair Market Value" of Isaac Soleimani's "WOHCF Revenue Sharing Interests[.]"

Amended WOHCF LLC Agreement § 11.12.  Similarly, Section 6.1 of the WOHCF LLC Agreement states that "Mr. Soleimani may be removed by the Company as an employee in accordance with the provisions of the Term Sheet, provided that the Company has satisfied *its obligations* under the Term Sheet relating to a Specified Termination Event (as defined in the Term Sheet)."  *Id.* § 6.1.  This language, on its own, does not definitively rule out the possibility that the obligation could be shared,[8] but taken together with the language in the Term Sheet, it

---

[7] In addition, WOGA agreed to limited new obligations under the Amended Term Sheet relating to an entity referred to as ServeCo.  *See* Amended Term Sheet at 5 ("WOGA agrees to support an agreement between WOHCF and ServeCo . . . .").  These obligations are not at issue in this action but further explain why WOGA executed the Amended Term Sheet.

[8] Soleimani notes out that the arbitration tribunal observed that "WOGA potentially might be liable for any damages to [Soleimani]" before dismissing it from the arbitration.

confirms that the parties intended WOHCF, not WOGA, to pay the revenue sharing interests. *See* Cal. Civ. Code § 1641.

Soleimani's argument rests on the Term Sheet's use of the passive voice to describe his entitlement to the payment of revenue sharing interests without explicitly assigning the obligation to WOHCF or WOGA: "Upon the occurrence of a Specified Termination Event, Employee *shall receive* the Calculated Fair Market Value of all his HVE Revenue Sharing Interests no later than the Specified Payment Date." Amended Term Sheet at 4 (emphasis added); *see also* Original Term Sheet at 4. He urges that joint and several liability is therefore presumed under California Civil Code Sections 1659 and 1660. *See* Compl. ¶ 7; Pl.'s Br. at 10-13. But, as the caselaw cited by Soleimani makes clear, this presumption is rebuttable, not conclusive, and controls only "in the absence of evidence to the contrary." *Kaneko v. Okuda*, 15 Cal. Rptr. 792, 798 (Dist. Ct. App. 1961); *see* Pl.'s Br. at 11. Thus, in one of Soleimani's cited cases, the court held that the presumption of joint and several liability controlled where defendants "presented no evidence to rebut this presumption." *Bennion & Deville Fine Homes, Inc. v. Windermere Real Est. Servs. Co.*, No. Civ. 15-01921, 2019 WL 13241681, at *5 (C.D. Cal. Jan. 15, 2019). And in another, the court held the defendants jointly and severally liable where "[t]here [wa]s no language in the Agreement that undermines the statutory presumption of joint-and-several liability." *In re Rabin*, No. 05-32572, 2007 WL 1686935, at *3 (Bankr. N.D. Cal. June 7, 2007).

Here, by contrast, there is significant evidence rebutting the presumption of joint and several liability. This case is therefore more like *In re Loral Space & Commc'ns Ltd.*, 412 B.R. 64 (S.D.N.Y. 2009), which both parties cite for their respective positions. There, the

---

Compl. ¶¶ 47-48. That equivocal comment on an issue the tribunal did not reach does not sway this Court's conclusion.

apportionment agreement at issue defined the term "Loral" to refer to multiple debtors, but other provisions of the agreement used the term "Loral" even though they "clearly pertain[ed] to an obligation of an individual Loral entity." *Id.* at 68. In particular, one paragraph referred to a separate letter agreement "Loral" had signed, but only one Loral entity was a party to that letter agreement. *Id.* Applying California law, the court held that "the Letter Agreement, the most persuasive and relevant piece of evidence before this Court, when read in conjunction with the Apportionment Agreement, conclusively demonstrates" that only one of the Loral entities was liable for the claim at issue. *Id.* at 71. The presumption in Sections 1659 and 1660 was therefore "trumped by evidence demonstrating that the parties did not intend the agreement to impose joint and several liability." *Id.*

Similarly here, the presumption of joint and several liability is conclusively rebutted by language in the Term Sheet and the WOHCF LLC Agreement making clear the parties' intent for WOHCF to pay the revenue sharing interests. The relevant obligations are attached "upon [Soleimani] becoming an employee of WOHCF" and are "acknowledged as obligations of the Company." Amended Term Sheet at 3; WOHCF LLC Agreement § 11.12. And the mechanisms for determining whether payment obligations are owing (arbitration) and in what amount (third-party appraisal) are contractually assigned to Soleimani and WOHCF, not WOGA. *See* Amended Term Sheet at 4, 7. The Court therefore concludes that the relevant provision of the Term Sheet is not "capable of two or more constructions, both of which are reasonable." *Another Planet*, 548 P.3d at 320. Because Soleimani does not "allege[] a meaning to the document that is reasonable in light of its terms," the Court may decide the case on the pleadings by "constru[ing] the language of the document on its face." *Hervey*, 110 Cal. Rptr. 3d at 896.

The Court is mindful that, under California law, "courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous." *A. Kemp*

*Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 497 n.2 (9th Cir. 1988).  But Soleimani does *not* argue that extrinsic evidence would render the contract ambiguous.  Indeed, other than implicitly through his reliance on California Civil Code Sections 1959 and 1960, Soleimani does not even argue that the language in the Term Sheet is ambiguous.  Rather, he argues that the "clear language" of the Term Sheet "demonstrates a clear intent" for both WOHCF and WOGA to be obligated to make the payments in question.  Pl.'s Br. at 1-2.  "Courts will not strain to create an ambiguity where none exists."  *Waller*, 900 P.2d at 627.  Here, Soleimani's implied assertion of ambiguity "does not require the [Court] to allow additional opportunities to find or present extrinsic evidence," because the Court has "consider[ed] the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation."  *Skilstaf*, 669 F.3d at 1017.

Because WOGA is not contractually liable to pay Soleimani's revenue sharing interests under the Term Sheet, Soleimani's claim against WOGA must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant WOGA's Motion to Dismiss is **GRANTED**.

The Clerk of Court is respectfully requested to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

Dated: July 21, 2025

New York, New York

DALE E. HO
United States District Judge